Date signed July 19, 2007



**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| MARSHALL R. RIEF, | * | Case No. 05-36514-JS |
| Debtor | * | Chapter 7 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### *MEMORANDUM OPINION SUSTAINING THE CHAPTER 7 TRUSTEE'S OBJECTION TO THE DEBTOR'S EXEMPTION OF THE CASH SURRENDER VALUE OF CERTAIN LIFE INSURANCE POLICIES*

The matter before the Court is the objection [P. 37] of the Chapter 7 trustee to the debtor's exemption of certain life insurance policies. The Maryland Insurance Exemption Statute provides that the cash surrender values of such policies are exempt where the debtor's "spouse, children or other dependent relative" are the beneficiaries. The questions presented are whether the statute grants an exemption to policies (1) on the life of the debtor where the beneficiaries are the debtor's decedent's estate, and the legatees under his last will and testament are his spouse and dependent children; and (2) on the life of the debtor's minor children where the debtor and his spouse are the

beneficiaries.  Because this opinion holds that the policies are not within the statutory exemption, the objection will be sustained and the exemption will be denied.

## FINDINGS OF FACT

1.  On October 12, 2005, Marshall R. Rief ("Rief" or "the debtor"), filed the instant voluntary Chapter 7 bankruptcy petition.

2.  In Schedule C, the debtor claimed as exempt ten life insurance policies.

3.  On May 16, 2006, Zvi Guttman, Esquire, the Chapter 7 trustee, filed an objection [P. 37] to the debtor's exemption of the ten life insurance policies, eight which insured his life, and the other two insured the life of each of his minor children.[1]

4.  The trustee objected to the exemption of three policies in which the debtor was the owner and the insured because they named as beneficiary the "Trustee Named in the Last Will and Testament of the Insured."[2]

---

[1] The trustee no longer objects to the exemption of five of the ten policies, three of which are term policies having no cash surrender value, one of which is owned by the debtor and his wife as tenants by the entireties, and the remaining one in which his wife is the named beneficiary.

[2] (1) Berkshire Life Insurance Co. of America, Policy No. L0955434, dated September 12, 1990, cash surrender value of $46,548.73 [Trustee's Exhibit No. 1]; (2) Berkshire Life Insurance Co. of America, Policy No. L0983019, dated January 15, 1993, cash surrender value of $73,449.53 [Trustee's Exhibit No. 2]; and (3) John Hancock Variable Life Insurance Co., Policy No. ML7121871 dated September 10, 2003, cash surrender value of $3,793.81 [Trustee's Exhibit No. 7].

5.  The trustee offered into evidence a letter to him from a representative of the John Hancock Life Insurance Co., dated April 21, 2006, which stated that the beneficiaries of the John Hancock policy "have been the last will and testament of the insured."  Trustee's Exhibit No. 12.  He also offered a letter from the Berkshire Life Insurance Co. of America dated February 27, 2006, that stated that the current beneficiary of Policy No. L0955434, is "Trustee under the Last Will and Testament," the beneficiary having been changed from "Joanne Rief, Wife," in December 1991. Trustee's Exhibit No. 13.  The letter also confirmed that the current beneficiary of Policy No. L0983019 is "Last Will and Testament."  *Id.*

6.  The trustee objected to the other two Berkshire Life policies because they were obtained by the debtor on the lives of his minor children and designated the debtor and his wife as beneficiaries.[3]

7.  The debtor reserved the right to change the beneficiaries in all five policies.

8.  The total cash surrender value of the three policies in which the debtor was the insured amounted to $123,792.07.  The cash surrender value of the two children's policies was $24,289.52.

_____

[3](1) Berkshire Life Insurance Co. of America, Policy No. L0977392, dated August 21, 1992, having a cash surrender value of $14,175.92 [Trustee's Exhibit No. 3]; and (2) Berkshire Life Insurance Co. of America, Policy No. L1004080, dated February 2, 1995, having a cash surrender value of $10,113.60 [Trustee's Exhibit No. 4].

9.   A hearing was held on the objection at which time the trustee called the debtor as a witness.  The debtor testified that he is married and the father of two minor children; that the children are 11 and 15 years of age; that he is the sole owner of the life insurance policies in question, despite the fact that he filed an amended Schedule B that indicated that the policies were jointly-owned by himself and his wife as tenants by the entireties; that the debtor is employed as a bail bondsman; that he owns only about $250 in assets, other than the insurance policies in question, retirement benefits that are exempt and certain businesses that have no value; that his wife supports the family with an annual income of approximately $150,000; that her total monthly income is about $16,000; that he and his wife are not dependents of their children; that he agreed with the cash surrender values of the policies as asserted by the trustee; that he is the beneficiary and his wife is the contingent beneficiary on the life insurance policy on their daughter; that the children's policies were taken out for their education; that he believes that the children's policies are not his assets, but those of his children that he holds in trust for them, although he acknowledged that the policies were payable to him and his wife upon the children's death; that in January 2005, he attempted to create a trust of the insurance policies known as "The Marshall R. Rief 2005 Trust" [Trustee's Exhibit No. 14], contemporaneous with his execution of his Last Will and Testament [Trustee's Exhibit No. 10], dated January 28, 2005;

4

that he executed the Trust Agreement on the advice of his estates and trusts attorney, Louis F. Friedman, Esquire; the witness did not purport to know the reason he needed such a trust agreement; that Mr. Friedman is the trustee; that the witness was not sure if he (the debtor) has any control over the trust, but that he was not aware that he had ever exercised any control over it; that the trust beneficiary was his wife, and no one else of whom he was aware; when shown page 4, § 4.1 of the Trust Agreement, he acknowledged that the Trust Agreement provided that funds may be disbursed to his children or to his grandchildren; and that he had no power to change the Trust Agreement.

10. The Chapter 7 trustee then called as a witness Louis F. Friedman, Esquire, who testified that he is an estates and trusts attorney with an office in Towson, Maryland; that he has been engaged in the practice of law as an estates and trusts lawyer for 41 years; that he has drafted thousands of wills and has administered more than 750 decedents' estates; that he prepared Mr. Rief's Last Will and Testament and the accompanying Trust Agreement; that the life insurance policies were never formally transferred to the trust; that the current status of the policies is that transfer forms were signed but not sent to the insurance companies; that if Mr. Rief were to die at the present moment, the witness would send in the forms and the insurance company would pay the policy proceeds to the trust; that the members of Mr. Rief's

5

immediate family are the beneficiaries of the trust; that if forms are not submitted, the policy proceeds will go to Mr. Rief's decedent's estate at his death, and through the estate to his wife; that the trust was created for estate tax purposes; that the debtor's wife and children were the original beneficiaries of the policies; that as of the present moment, the beneficiary is his decedent's estate. The witness acknowledged that if the insurance proceeds go into the debtor's probate estate at his death, creditors will have priority claims against the funds ahead of the family members, and that even the debtor's funeral expenses would be paid first.

11. In his Last Will and Testament, the debtor bequeathed all his personal property to his wife, Joanne B. Rief, and devised his residuary estate to the "Trustee of the Family Trust under the Joanne B. Rief Revocable Trust Agreement." The Will provided, in pertinent part:

> **ITEM III**. - **REQUEST OF TANGIBLE PERSONAL PROPERTY** – I hereby give and bequeath all automobiles, furniture, chinaware, silverware, household furnishings, books, pictures and other similar objects, all clothing, jewelry and all other tangible personal property which I may own at the time of my death, to my beloved wife, Joanne B. Rief, if she survives me. If my wife does not survive me, I hereby give and bequeath the aforesaid property unto such of my children, [names redacted], as survive me, to be divided equally between them by my Personal Representative, hereinafter named, having due regard for their personal preferences.
>
> **ITEM IV - RESIDUARY ESTATE**. All the rest, residue and remainder of my estate, real and personal, of whatsoever kind and

6

description and wheresoever the same may be situated, which I may own at the time of my death, I give, devise and bequeath to my wife, Joanne B. Rief, if she survives me. If my wife predeceases me, then I give, devise and bequeath the same to the Trustee of the Family Trust under The Joanne B. Rief Revocable Trust Agreement, subject to all duties, responsibilities, powers, instructions and limitations as provided therein, to be held in trust and/or paid over as therein provided. If, however, the Family Trust is not continuing at the time of my death pursuant to the terms of the[sic] The Joanne B. Rief Revocable Trust Agreement, as the same may be amended, my wife having predeceased me, then and in that event I give, devise and bequeath said rest and residue of my estate to my issue, per stirpes.

**ITEM V – POWERS OF PERSONAL REPRESENTATIVE**. In addition to any powers given to my Personal Representative by law, I confer upon my Personal Representative the following powers, which may be exercised in the Personal Representative's sole and absolute discretion, without prior or subsequent approval by any court: to retain, invest or reinvest, sell, borrow funds, mortgage, lease, exchange, manage, or otherwise deal with any real or personal property; to vote any securities in any manner and for any purpose; to compromise and settle any claim against or in favor of my estate; to execute, acknowledge and deliver documents; to divide the estate in kind, or sell any property for the purpose of division, without any obligation on the part of the purchaser in any sale to see to the application of the purchase money; to make any tax election permitted by any tax law; to do all things which I could do if I were alive. All decisions taken in good faith are binding on all persons. For convenience I refer to the Personal Representative in the singular; however, the singular and plural include each other wherever appropriate.

Trustee's Exhibit No. 10.

7

12.    The Will directed that the debtor's personal representative administer his decedent's estate but did not make reference to the Marshall R. Rief 2005 Trust, which the debtor argued was the intended beneficiary of the policies.

13.    The Marshall R. Rief 2005 Trust [Trustee's Exhibit No. 14] provided in Section 1, Transfer to Trust, as follows:

> Concurrently with the execution of this Agreement, the Grantor has transferred to the Trustee Ten Dollars ($10.00) in cash, receipt of which is hereby acknowledged by the Trustee.  Other property, real or personal (including life insurance policies) ***may be transferred***, endorsed or otherwise made payable to the Trustee. . .

*Id*.  *(Emphasis supplied.)*  The debtor acknowledged that no such transfer occurred.

## CONCLUSIONS OF LAW

1.    "As an original proposition, it is accepted that, under appropriate circumstances, proceeds from insurance policies are just as much an asset available to creditors as any other property of a debtor, such as real property or chattels."  Bridgewater M. Arnold, *Life Insurance as an Asset Available to Creditors in Maryland*, 6 Md L. Rev. 275 (1942).

2.    In the case of *Merchs.' & Miners' Transp. Co. v. Borland*, 53 N. J. Eq. 282, 285, 31 A. 272, 273 (N. J. 1895), the court stated:

> There is no mystery or charm about life insurance.  It is not a means of creating wealth, nor yet a contract of mere indemnity, as is that of fire

8

and marine insurance.  It is, in its most usual form, simply a mode of putting by money for savings.

*Id.*

3.  Proceeds of life insurance policies owned by a debtor on the petition date are property of the debtor's estate and may be administered by the bankruptcy trustee, *Cohen v. Samuels*, 245 U.S. 50, 38 S. Ct. 36, 62 L. Ed. 143 (1917), subject to any valid exemption by the debtor.  *A.H. Robins Co. v. Piccinin*, 788 F. 2d 994, 1001 (4th Cir. 1986) (noting that insurance contracts held by the debtor are included in the term "property" as that term is used in 11 U.S.C. § 541(a)(1)); *see also In re Davis*, 275 B.R. 134, 137 (Bankr. D. D.C. 2002).

4.  ". . . [T]he trustee is entitled to the cash surrender value, but no more, that has become earned and determined at the date of the filing of the bankruptcy petition (whether then payable or payable at a later default or anniversary date) upon all insurance policies on the bankrupt's life not exempt by state law, and payable to the bankrupt, his estate or personal representative, or in which the beneficiary may be changed at the bankrupt's will."  *In re Cooper's Estate*, 28 F.2d 438, 439 (D. Md. 1928).  The amount of the cash surrender value is fixed as of the petition date.  *Everett v. Judson*, 228 U.S. 474, 479, 33 S. Ct. 568, 570, 57 L. Ed. 927, 929 (1913).

9

5. "Cash surrender value has been defined as the cash value – ascertainable by known rules – of a contract of insurance abandoned and given up for cancellation to the insurer by the owner, having a contract right to do so." 5 *Couch on Insurance*, § 66:9 (3d ed. 2006). For the calculation of cash surrender value of life insurance policies in Maryland, *see* Maryland Insurance Code § 16-305 (2006).

6. Maryland has "opted out" of the Federal exemptions set forth in Section 522(d) of the Bankruptcy Code, 11 U.S.C. § 522(b); Md. Cts. & Jud. Proc. Code § 11-504(g); *In re Butcher*, 189 B.R. 357, 363 (Bankr. D. Md. 1995), *aff'd sub nom. Governor Plaza Assoc. v. Butcher (In re Butcher)*, 125 F.3d 238 (4th Cir. 1997). Therefore, debtors filing bankruptcy in Maryland may exempt property solely pursuant to Maryland law. *In re Bell-Breslin*, 283 B.R. 834, 840 (Bankr. D. Md. 2002); *In re Levy Ford*, 3 B.R. 559 (Bankr. D. Md. 1980), *aff'd sub. nom., Greenblatt v. Ford*, 638 F. 2d 14 (4th Cir. 1981). In Maryland, "[a]n exemption is a debtor's statutory privilege to retain a portion of his or her property free from a creditor's judicial seizure and sale. Exemptions protect debtors to the extent of ensuring that they are not completely deprived of their means of support; they protect the necessities by which to earn a living." *Schumacher & Seiler, Inc. v. Fallston Plumbing, Inc*., 91 Md.App. 696, 701, 605 A.2d 956, 958 (1992).

7. The instant case is not governed by Section 11-504(b)(2) of the Courts and Judicial Proceedings Article of the Maryland Code,[4] which provides an exemption of monies payable to the debtor as beneficiary. *In re Kleinman*, 272 B.R. 339, 345 (Bankr. D. Md. 2001) (proceeds from life insurance policies insuring life of Chapter 7 debtor-beneficiary's deceased wife, who died prepetition, were exempt); and *In re Howland*, 27 B.R. 896 (Bankr. D.Md. 1983) (life insurance proceeds paid to debtor at death of her spouse were exempt).

8. The Maryland statute that is applicable to the facts in the instant case is currently codified as Section 16-111 of the Maryland Insurance Code, which provides as follows:

### § 16-111. Proceeds exempt from creditors.

---

[4]Section 11-504(b)(2) provides as follows:

(b) The following items are exempt from execution on a judgment:

       *             *            *            *

(2) Money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings. This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief. Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability is incurred.

Md. Cts. & Jud. Proc. Code § 11-504(b)(2).

11

(a) The proceeds of a policy of life insurance or under an annuity contract on the life of an individual made for the benefit of or assigned to the spouse, child, or dependent relative of the individual are exempt from all claims of the creditors of the individual arising out of or based on an obligation created after June 1, 1945, whether or not the right to change the named beneficiary is reserved or allowed to the individual.

(b) For purposes of this section, proceeds include death benefits, cash surrender and loan values, premiums waived, and dividends, whether used to reduce the premiums or used or applied in any other manner, except if the debtor has, after issuance of the policy, elected to receive the dividends in cash.

(c) This section does not prohibit a creditor from collecting a debt out of the proceeds of a life insurance policy pledged by the insured as security for the debt.

(d) A change of beneficiary, assignment, or other transfer is valid except for transfer with actual intent to hinder, delay, or defraud creditors.

Md. Insurance Code § 16-111 (2006).

9.  In Maryland, a debtor in bankruptcy is entitled to exempt the full amount of the cash surrender value of life insurance policies, regardless of whether the right to change beneficiaries is reserved or permitted to such person.  *In re Posin*, 183 F. Supp. 380 (D. Md. 1960), *aff'd sub. nom Brown v. Posin*, 284 F.2d 300 (4th Cir. 1960).

10.  In *Posin*, 183 F. Supp. at 386, it was held that a debtor's exemption of the cash surrender value of life insurance policies as provided for by the statute quoted above was not limited to the amount of $500 imposed by the Maryland Constitution

12

on exemptions from execution.  The decision by the U.S. District Court [Watkins, J.] was based upon the reasoning that an insurance policy is a *chose in action*, liable only to attachment and not execution.  *See* Note, *Exemption of Life Insurance Cash Surrender Values From Bankruptcy Proceedings in Maryland*, 22 Md. L. Rev. 66 (1962).

11.  While the bankruptcy courts liberally construe exemptions available to debtors in bankruptcy in order to afford them a fresh start, Judge Mannes of this Court has appended a caveat to that policy that where, as here, the statute providing the exemption is unlimited as to amount, the terms of the statute governing the exemption must be construed strictly.  *Howland*, 27 B.R. at 898.

12.  Accordingly, this Court cannot extend the scope of the statute to allow exemptions that the legislature did not intend to authorize.  *In re Bunnell*, 322 B.R. 331 (Bankr. N.D. Ohio 2005) (exemption statute could not be extended to include debtor's sister who was trustee of the debtor's insurance trust created for the benefit of the debtor's children); *In re Thurman*, 120 B.R. 99 (Bankr. M.D. Tenn. 1990) (insurance exemption statute was held inapplicable to policy in which the beneficiary was the debtor's sole proprietorship).

13.  The analysis of the issues presented must begin with the language of the statute.  *Kleinman*, 272 B.R. at 343.  The debtor's ability to exempt the insurance

proceeds in question must be judged according to the plain meaning of the statute and its application to the facts presented. *Kleinman*, 272 B.R. at 341. ("The plain meaning of the statute exempts proceeds of a life insurance policy on the life of an individual from claims of the creditors of the individual if, *inter alia*, the policy is for the benefit of the individual's spouse" [or beneficiary as enumerated in § 16-111(a)] from the claims of the creditors, but not from the claims of the beneficiary's creditors.).

14. Subsection (a) of the statute contains three requirements for exemptibility. First, the life insurance policy must be on "the life of an individual," in this case, the debtor. Second, the policy must be "made for the benefit of or assigned to the spouse, child, or dependent relative of the individual." Thus, while the policy must be on the life of the debtor, the beneficiary must be someone other than the debtor who has an insurable interest in the debtor's life. *See Hopkins v. Hopkins*, 328 Md. 263, 268, 614 A.2d 96, 98 (1992) (spouses have an insurable interest in each other under the common law), quoted in *In re Davis*, 275 B.R. at 139: "At common law, an insurable interest connoted a relationship between the insured and the beneficiary such that, for the beneficiary, there is an actual expectancy which will be curtailed by the insured's death." (Internal citations omitted.) Third, the claims from which the proceeds of the policy are exempt must be those of creditors "of the individual," that is, the insured, "arising out of or based on an obligation created after June 1, 1945," which was the

14

effective date of the statute.[5]  Furthermore, this subsection states that it applies to exempt such policies "whether or not the right to change the named beneficiary is reserved or allowed to the individual."[6]

15.   Subsection (b) defines "proceeds" to include "death benefits, cash surrender and loan values, premiums waived, and dividends."  The only exception to the debtor's exemption of "proceeds" stated in the subsection, is that, after the policy was issued, the debtor may not have "elected to receive the dividends in cash."

16.  Subsection (c) further limits the exemptibility of proceeds by providing that in the situation where the debtor has pledged the policy or its proceeds as security for a debt, creditors are not prohibited " from collecting a debt" from such proceeds.

17.   Finally, subsection (d) specifies that a debtor's change of beneficiary, assignment, or other transfer is valid unless made "with actual intent to hinder, delay, or defraud creditors."

18.  Based upon the requirement of § 16-111(a) that to be exempt, the policy must be "made for the benefit of or assigned to the spouse, child, or dependent relative of the individual," the cash surrender value of the policies on the life of the debtor that

---

[5]There is no contention that any debts scheduled by the debtor in the instant case arose prior to that date.

[6]The debtor's right to change beneficiaries is not at issue.

designated as beneficiaries "the Trustee named in the Last Will and Testament of the Insured," or simply "Last Will and Testament," may not be exempted.

19.  Had the policies provided that the beneficiaries were the debtor's spouse, dependent children, or other dependent relative, their cash surrender value would have been protected from creditors of the debtor, and hence, his trustee. § 16-111(a).  The fact that the debtor's spouse and dependent children as legatees under his Last Will and Testament are the same beneficiaries protected under the statute does not extend the terms of the statute to them.  See 5 *Couch on Insurance*, § 67.5 (3rd ed. 2006): "When the proceeds of insurance are bequeathed by the insured, the legatee is not to be deemed a beneficiary of the policy, since the legatee does not receive the proceeds until they have been received by the beneficiary of the policy, the decedent's estate." *Id*.

20.  The statute does not insulate insurance proceeds from the claims of creditors when the debtor's estate is the designated beneficiary of the insurance policies.  *Cf. Bank of Minden v. Clement*, 256 U.S. 126, 128, 41 S. Ct. 408, 65 L. Ed. 857, 859 (1921) ("When the deceased took out the policies of insurance upon his life, they became his property, subject to the claims of his creditors.").  In the absence of a statutory exemption, the bequest by the insured debtor to his estate of the proceeds of the life insurance policies in question is subject to the claims of his creditors.  *See*

16

*Annotation, Disposition by will of proceeds of life insurance payable to estate*, 43 A.L.R. 573, 578 (1938) ("The fact that certain persons are the legatees or distributees under a will devising and bequeathing to them all the property of the testator does not substitute them as beneficiaries in policies of life insurance which are payable to the executors, administrators or assigns of the insured, in the sense that they are free from liability for the debts of the testator; and at the death of the insured, the proceeds of these policies become a part of the estate of the deceased, payable to his executors and administrators, and are liable for the debts of the decedent, subject only to the statutory exemptions in favors of the heirs or legatees.") *(Citations omitted)*; See 5 *Couch on Insurance*, § 67.5 (3rd ed. 2006): "In consequence of the fact that the proceeds received by the estate of the insured formed part of his or her estate, it is subject to the debts of the decedent's estate, and the legatee takes subject thereto." *Id*.

21.  Because the policies in question were not *assigned* to the spouse, child, or dependent relative of the individual, the cash surrender value of those policies is not exemptible under the terms of § 16-111(a).

22.  Because the policies were never assigned to a testamentary trust or to the Marshall R. Rief 2005 Trust, which appears to have been an attempted *inter vivos*

17

transfer of the debtor's rights in property in the nature of a spendthrift trust,[7] the question of whether the statute would authorize the exemption of life insurance policies in which a trustee was the named as the beneficiary of insurance policies is not strictly before the Court.

23.  Even assuming that the debtor intended to create the trust to shield the policies from his creditors and those of his spouse, children and grandchildren, (in addition to his avowed intent of shielding the policies from the incidents of estate taxation), such intention was defeated by his failure to comply with the requirements of the Trust Agreement that the policies be made payable to the Trust, and the requirements of the policies regarding change of beneficiary procedures.  Provisions in the policies themselves regarding change of beneficiaries by the insured control the

---

[7]The purpose of a spendthrift trust is to protect a beneficiary against his or her own folly or inefficiency or misfortune and requires the express intent to establish such a spendthrift trust in the instrument creating it.  Such a trust provides that the interests of the beneficiary are not transferable by the beneficiary and are not within the reach of creditors.  *Duvall v. McGee,* 375 Md. 476, 826 A. 2d 416 (2003).  Spendthrift trusts have been recognized in Maryland since the case of *Smith v. Towers*, 69 Md. 77, 14 A. 497 (1888).  In order to create a spendthrift trust, the donor must manifest an intention to create such a trust by appropriate language restricting alienation of the interest of beneficiaries.  *Plitt v. Yakel*, 129 Md. 464, 99 A. 669 (1916).  In addition to restrictions on alienation, there must be a provision that all payments directed to be made, or all monies paid to any beneficiaries, shall be made or paid into their hands and not into the hands of any other claimant, without the right of anticipation.  *Medwedeff v. Fisher,* 179 Md. 192, 17 A.2d 141 (1941); *Johnson v. Stringer*, 158 Md. 315, 148 A. 447 (1930).

18

means by which the beneficiaries may be changed. *McCarthy v. Aetna Life Ins. Co.*, 92 N.Y.2d 436, 681 N.Y.S.2d 790, 704 N.E.2d 557 (1998). In determining whether one is entitled to be a beneficiary under an insurance policy, the courts consider the terms of the policy. *Filipowicz v. American Stores Benefit Plan*, 56 F.3d 807, 812 (7th Cir. 1995). The debtor's estates and trusts attorney acknowledged that the debtor never changed the beneficiaries designated in the policies to reflect the transfer of the policies to the trust by submitting the required forms to the insurers.

24. The debtor's contention that the Marshall R. Rief 2005 Trust was the intended beneficiary of the policies fails because the policies were not assigned to the Trust. *See Bartholow v. Garner*, 43 B.R. 463 (N.D. Tex. 1984) (questioning without deciding whether the exemption statute applies when the beneficiary of insurance policies is a trust, rather than a member of the debtor's family, but holding that contingencies in the trust in which the family members were beneficiaries defeated the exemption).[8]

---

[8]The issue of whether a valid, self-settled insurance trust is excluded from property of the debtor's estate, pursuant to 11 U.S.C. § 541(c) is not before the Court. *See* Rothschild and Rubin, *Creditor Protection for Life Insurance and Annuities*, The Journal of Asset Protection, May 1999: "There is little doubt that section 541(c)(2) of the Bankruptcy Code would also serve to exclude the trust property from the settlor/debtor's bankruptcy estate as a spendthrift trust enforceable under applicable non-bankruptcy law." *Id.*

25.  Likewise, the proceeds of the two life insurance policies in which the debtor's minor children were the insureds and which named the debtor and his wife as the sole beneficiaries are not exemptible.

26.  First, in order for the proceeds of the policies to be exemptible under the terms of § 16-111(a), they must be those of a policy in which the debtor is the insured individual.  In *Posin*, 183 F. Supp. at 386, Judge Watkins stated that it was the plain purpose of the statute "to encourage men to insure their lives for the benefit of their families."  *Id*,[9] *citing Hickman v. Hanover*, 33 F.2d 873, 874 (4th Cir. 1929).

27.  Second, for the exemption to be available, the plain meaning of § 16-111(a) also requires that the policy "be made for the benefit of or assigned to the spouse, child, or dependent relative of the individual."  *Id*.  Because neither the debtor nor his wife are dependents of their minor children, the claimed exemption fails.  *Cf. Schriar v. Mose (In re Schriar)*, 284 F.2d 471 (7th Cir. 1960) (non-dependent adult children were not beneficiaries within the statute to render the policy proceeds exempt).  Likewise, for the exemption to be available, the debtor may not be the beneficiary of

---

[9]It is obvious that in referring to "men," Judge Watkins did not mean to limit the purpose of the statute to the protection of proceeds of policies issued to persons of the male gender, but rather to those individuals who were debtors.  This is the true construction because in the paragraph preceding the statement quoted above, the Judge referred to "the humane purpose of preserving to the unfortunate or improvident debtor or his family the means of obtaining a livelihood and prevent them from becoming a charge upon the public."  *Id*.

the policy.  *Cf. In re Messenger*, 29 F.2d 158 (2d Cir. 1928) (exemption of insurance policy proceeds under the statute was prohibited where the debtor changed the beneficiary to himself).

28.  Contrary to the debtor's argument, the life insurance policies held by the debtor on the lives of his minor children were not for their educational benefit, where the proceeds were payable to the debtor and his wife upon the children's death.  *Cf. Fogel v. Bangs (In re Fogel)*, 164 F.2d 214 (1947) (children's educational endowment policies were exempt from debtor's bankruptcy under Indiana law).

**WHEREFORE**, the trustee's objection will be SUSTAINED and the debtor's exemption of the cash surrender value of the enumerated life insurance policies will be DENIED.

***ORDER ACCORDINGLY.***


cc:    James A. Vidmar, Jr., Esquire
       Linowes and Blocher
       7200 Wisconsin Avenue, Suite 800
       Bethesda, Maryland  20814-4842
       Counsel to the debtor

       Zvi Guttman, Esquire
       The Law Offices of Zvi Guttman, P.A.
       P. O. Box 32308
       Baltimore, Maryland  21282-2308
       Chapter 7 Trustee

       Mr. Marshall Rief

3726 Ashley Way
Owings Mills, Maryland  21117
Debtor

Office of the U.S. Trustee
2625 U.S. Courthouse
101 West Lombard Street
Baltimore, Maryland  21201

END OF OPINION